IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MURUGESAN KANNAYAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOLLAR PHONE CORP., *et al.*, | ) | Case No. CIV-08-300-D |
| | ) | |
| Defendants-Third Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHAD DOBBINS, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**O R D E R**

This declaratory judgment action comes before the Court for decision pursuant to Fed. R.

Civ. P. 56.  The following motions are fully briefed and at issue:  Plaintiff's Motion for Partial

Summary Judgment [Doc. No. 36], as corrected [Doc. No. 37]; and Third Party Defendant Chad

Dobbins' Motion for Summary Judgment [Doc. No. 14].  These Motions seek judgments as a matter

of law, respectively, as to Plaintiff's action against Defendants Dollar Phone Corp. and Dollar Phone

International, Inc. (collectively "Dollar Phone") and Defendants' third-party action against Third-

Party Defendant Chad Dobbins ("Dobbins").[1]  Also, Dollar Phone has responded to Plaintiff's

Motion by presenting a separate statement of undisputed facts and arguing that Dollar Phone, not

Plaintiff, is entitled to summary judgment under the theory alleged in Dollar Phone's counterclaim.

Although Plaintiff correctly argues that Dollar Phone's request is procedurally improper, the Court

---

[1]  The dispute concerns a contract that identifies the contracting party as "Dollar Phone Intl."  The parties agree, however, that Dollar Phone Corp. is a successor and/or assignee of Dollar Phone International, Inc. under the contracts at issue. *See* Petition [Doc. 1-2], ¶ 10; Answer [Doc. 6], ¶ 10.

elects for reasons discussed below to consider Dollar Phone's argument, to which Plaintiff has responded.  *See* Pl.'s Reply Br. [Doc. 50] at 3-6.  The Court thus proceeds to rule on all issues presented for decision.[2]

## Procedural History

Plaintiff Murugesan Kannayan ("Kannayan") commenced this action against Dollar Phone in state court to obtain a declaratory judgment and to enjoin an arbitration proceeding pending before the American Arbitration Association.  Specifically, Kannayan seeks a determination that an arbitration agreement in a written contract he signed as a representative of a limited liability company – Kannayan Family, LLC – is not binding on him personally and there is no arbitration agreement between him individually and Dollar Phone that would authorize an arbitration against him to collect the company's debt.  Dollar Phone removed the action to federal court under diversity jurisdiction and, with its answer, filed a counterclaim against Kannayan and a third-party claim against Dobbins.  Dollar Phone seeks a declaratory judgment that Kannayan and Dobbins are bound by an arbitration agreement in a separate contract, which was signed by Dobbins on behalf of "Time Advisors," and an order requiring Kannayan and Dobbins to participate in the arbitration proceeding.

Briefly stated, Dollar Phone's theory is that Kannayan and Dobbins were partners in a general partnership called Time Advisors, and that each partner is personally liable under the partnership's contract and, due to an arbitration clause, may be individually required to arbitrate

---

[2] Because Dobbins filed his Motion before the initial scheduling conference, Dollar Phone responded to the Motion, in part, by asserting that the Court should deny or defer a ruling on the Motion pursuant to Fed. R. Civ. P. 56(f).  In support of the request, Dollar Phone presented the affidavit of an attorney stating that Dollar Phone lacked access to necessary information that would be obtained in discovery.  The time period for discovery ended on October 6, 2008, but Dollar Phone has made no request to supplement its response.

disputes arising from the contract. The debt that Dollar Phone seeks to collect in the pending arbitration proceeding, however, is not an unpaid account of the alleged partnership, Time Advisors; it is an unpaid account of Kannayan Family, LLC, doing business as Spydernett, which allegedly owes $79,949.76. Dollar Phone alleges upon information and belief that Time Advisors and Spydernett commingled their accounts and that Spydernett's default "was the result of Spydernett's having paid monies on behalf of Time Advisors to Dollar Phone to keep Time Advisors current, in an attempt to avoid personal liability for Murugesan Kannayan and Chad Dobbins." *See* Answer [Doc. 6], ¶ 38.

### Standard of Decision

Summary judgment is appropriate if the pleadings, affidavits, and evidence on file "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is essential to the disposition of a claim under controlling law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a rational trier of fact could resolve the issue either way. *See id.* All facts and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248;

*Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(e)(2). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Statement of Undisputed Facts

In January, 2002, Dobbins and other non-parties formed a Texas limited partnership named Time Advisors, L.P. According to the limited partnership agreement submitted by Dobbins, he was a limited partner in Time Advisors, L.P., and the general partner was Danny Bannister, Jr. Dobbins denies that Kannayan was a partner in Time Advisors, L.P. or that he and Kannayan were ever partners in any partnership. Dobbins states that Kannayan simply "was, at one time, an employee of Time Advisors." *See* Dobbins Aff. [Doc. 14-2], ¶ 4.

Dollar Phone provides services related to prepaid phone cards. In February, 2005, Dobbins signed a form distributor agreement between Dollar Phone as provider and "Time Advisors" as distributor; the document contains an address for Time Advisors in Oklahoma City. When signing the form contract, Dobbins printed only his name in the signature block; he did not indicate a position or title. By affidavit, Dobbins states that he was acting on behalf of Time Advisors, L.P. The agreement was transmitted to Dollar Phone by fax with a cover page that bears a printed name and logo for Time Advisors, the same Oklahoma City address, and a handwritten message from Kannayan stating: "Agreement signed by my partner Chad Dobbins." *See* Answer, Ex. A [Doc. 6-2], at 1; *see also* Dobbins Aff. [Doc. 14-2], Ex. D. Dobbins denies having seen, or being aware of, the fax cover sheet before this lawsuit.

Dollar Phone denies that Time Advisors, L.P. is the entity that entered into the distributor agreement. Dollar Phone presents the affidavit of an employee, Abraham Landau, stating that he negotiated the Time Advisors distributor agreement on behalf of Dollar Phone, that he dealt solely with Kannayan on behalf of Time Advisors, that he received various business emails from Kannayan using an address of "muru@timeadvisors.com," and that he believed Time Advisors was "a common-law Oklahoma partnership between [Dobbins] and [Kannayan]." *See* Landau Aff. [Doc. 22], ¶¶ 15, 17, 20.

Kannayan Family, LLC is a limited liability company organized under Oklahoma law in May, 2005, and doing business as Spydernett. The company's business is the purchase, distribution, and sale of telephone calling card services in the form of phone cards. Kannayan is the chief executive officer (CEO) and manager of Kannayan Family, LLC; he is not a member or owner of the company. In October, 2005, Kannayan signed a distributor agreement with Dollar Phone on behalf of "Spydernett, . . . a Kannayan Family LLC" in a form identical to the Time Advisors agreement. Dollar Phone admits that Kannayan executed the contract in a representative capacity as CEO and manager of Kannayan Family, LLC and that he has no personal liability under the Spydernett agreement. Dollar Phone asserts, however, that Kannayan does have personal liability under the Time Advisors agreement. Based on the same affidavit presented in opposition to Dobbins' Motion, Dollar Phone contends that Kannayan presented the Time Advisors agreement as a contract signed by his "partner" and that Dollar Phone accepted it as the contract of a general partnership consisting of Kannayan and Dobbins.

Pursuant to the Time Advisors agreement, Dollar Phone provided phone cards to Time Advisors as a distributor, and Time Advisors paid Dollar Phone for those cards. However, Dollar

Phone presents the affidavit of a financial officer, Rachel Klein, stating that Dollar Phone dealt with Kannayan on two accounts, Time Advisors and Spydernett, which Dollar Phone treated as separate accounts and billed through separate invoices.  Klein states that Dollar Phone received money by wire transfers from a Spydernett account to pay amounts owed by Time Advisors and Spydernett, that Dollar Phone received instructions from Kannayan regarding how to apply payments that were insufficient to pay all of the outstanding balances on both accounts, and that Dollar Phone received communications from Kannayan from time to time on behalf of both Time Advisors and Spydernett to discuss payment terms for particular invoices.

Finally, Dobbins presents documents regarding a checking account at Bank of Oklahoma for "Time Advisors, LP." An account application lists the same Oklahoma City address that appears on the distributor agreement and the fax cover sheet.  A monthly statement shows the account was closed in April, 2006.  In his affidavit, Dobbins states that Time Advisors, L.P. "was in the process of winding down and getting out of the business" before Kannayan signed the Spydernett agreement in October, 2005, and that Time Advisors, L.P. had "completed all major financial transactions by November of 2005."  *See* Dobbins Aff. [Doc. 14-2], ¶ 6.  Dobbins denies that Kannayan had authority to act on behalf of Time Advisors, L.P. or Dobbins, and denies that Time Advisors, L.P. commingled funds with Spydernett or Kannayan.

### Motions for Summary Judgment

Kannayan's Motion seeks summary judgment in his declaratory action against Dollar Phone, arguing that he personally was not a party to the Spydernett agreement and he did not individually agree to arbitration by signing the agreement.  Dobbins' Motion seeks summary judgment on Dollar Phone's declaratory action, arguing that Dollar Phone lacks evidence of a partnership between

Dobbins and Kannayan or a connection between Dobbins and Spydernett and that Time Advisors, L.P. was a limited partnership, had no relationship with Spydernett, and did not agree to arbitrate a dispute regarding Spydernett's account.  Dollar Phone argues in opposition to Dobbins' Motion and in support of its counter-motion against Kannayan that there are sufficient facts to establish a partnership and a commingling of accounts but, alternatively, the merits of Dollar Phone's claims should be decided by arbitration, as agreed.

### Discussion

This action to determine the enforceability of arbitration provisions in agreements involving interstate commerce is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.  Under the Act, a court must decide certain "gateway" issues that determine the arbitrability of a dispute, namely, whether the parties are bound by a given arbitration clause and whether the arbitration clause applies to a particular controversy.  *See Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84 (2002).  Plaintiff's Motion and Dobbins' Motion challenge Dollar Phone's proof as to both issues.  Dollar Phone relies solely on the arbitration clause of the Time Advisors agreement to establish the arbitrability of the underlying dispute.

### 1.      Is Kannayan Personally Bound by the Arbitration Clause?

While the Act creates a body of federal substantive law of arbitrability, federal courts "look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997).  Here, Dollar Phone concedes that Kannayan did not personally agree to arbitration by signing the Spydernett agreement.  Dollar Phone instead claims that Kannayan is bound by the arbitration clause in the Time Advisors agreement by virtue of an alleged partnership with Dobbins, who allegedly signed the agreement

on behalf of a general partnership. Under basic principles of contract and modern partnership law, a general partner may be held personally responsible for the partnership's contractual obligations, and federal courts applying such principles have held that a general partner can be bound by an arbitration agreement signed on behalf of a partnership. *See*, *e.g.*, *Hall v. Internet Capital Group, Inc.*, 338 F. Supp. 2d 145, 147 n.1 (D. Maine 2004); *see also Eassa Properties v. Shearson Lehman Bros., Inc.*, 851 F.2d 1301 (11th Cir. 1988) (signature of general partner bound partnership to arbitrate disputes).

To establish the partnership theory in this case, Dollar Phone relies solely on Kannayan's statement that the contract was signed by his partner and Landau's belief that he was dealing with a common-law Oklahoma partnership. Dollar Phone presents no current legal authorities to support its claim.[3] Research reveals that Oklahoma has enacted the Oklahoma Revised Uniform Partnership Act, Okla. Stat. tit. 54, § 1-100 *et seq*., which provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." *Id*. § 1-202(a). The facts presented by Dollar Phone are insufficient to establish the formation of a partnership under this statute, that is, through an association between Kannayan and Dobbins to carry on a business as co-owners. However, the Act also provides for liability of a "purported partner" as follows:

> If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation , enters into a transaction with the actual or purported partnership.

---

[3] Dollar Phone cites a repealed statute, Okla. Stat. tit. 54, § 206, and cases decided under prior laws.

*Id*. § 1-308(a).   On the record presented, the Court finds that Dollar Phone has presented sufficient facts and evidence to create a genuine dispute of fact regarding whether Kannayan may be held liable as a purported partner under the Time Advisors agreement.   Thus, the Court cannot determine as a matter of law whether or not Kannayan is personally bound by the arbitration clause in the Time Advisors agreement.

### 2.      Is Dobbins Personally Bound by the Arbitration Clause?

The question presented with respect to Dobbins is whether the agreement he signed on behalf of "Time Advisors" obligates him personally to arbitrate disputes.   Dollar Phone contends that Dobbins signed the Time Advisors agreement as a general partner of the alleged partnership with Kannayan; Dobbins contends he signed on behalf of Time Advisors, L.P.   The capacity in which Dobbins signed the Time Advisors agreement cannot be decided on the record before the Court.

The Time Advisors agreement identifies the contracting party only as "Time Advisors" and contains no information to describe or otherwise identify the named entity.   Dollar Phone has not come forward with sufficient facts or evidence to show the existence of a partnership between Kannayan and Dobbins under Oklahoma law, as discussed above.   Moreover, unlike Kannayan, there is no basis to hold Dobbins liable as a "purported partner;" Dollar Phone has presented no fact or evidence to show that Dobbins consented to being represented as a partner by Kannayan.   The fax cover sheet containing Kannayan's statement that the Time Advisors agreement was signed by his partner bears a "cc" notation indicating a copy was sent to Dobbins, but Dobbins' sworn statement that he did not receive a copy stands unrefuted in the record.   Thus, the Court finds that Dollar Phone has presented insufficient facts or evidence to permit a determination that Dobbins is personally liable under Dollar Phone's alleged partnership theory.

9

On the other hand, the evidence presented by Dobbins does not permit a determination that he signed the Time Advisors agreement on behalf of Time Advisors, L.P.  The limited partnership documents show Dobbins was a limited partner in Time Advisors, L.P., but the partnership agreement also shows that a limited partner could not take part in management and lacked "any right, power or authority to act for or bind" the limited partnership.  *See* Dobbins Aff. [Doc. 14-2], Ex. A, Limited Partnership Agreement, ¶ 12.2.  The bank documents submitted by Dobbins regarding "Time Advisors, LP" at the address shown on the distributor agreement includes an account application that lists the type of organization as a "Partnership" and the signatures required on the checking account as "All general partners."  The application bears two signatures dated September 22, 2005, of persons with the title, "Partner:"  Dobbins and James Bannister.  If this is the same "Time Advisors" on whose behalf Dobbins signed the distributor agreement in February, 2005, then it would appear Dobbins was acting as a general partner.

Therefore, the Court finds that Dobbins might be personally bound by the arbitration clause in the Time Advisors agreement, but the existing record does not permit a determination of the issue as a matter of law.[4]

The determinations above that it cannot be decided on summary adjudication that Kannayan and Dobbins are personally bound by the Time Advisors arbitration provision do not end the inquiry. The Court must also consider whether the Time Advisors agreement and its arbitration provision apply to the controversy involving the debt of Spydernett.

**3.     Does the Arbitration Clause Apply to This Controversy?**

---

[4] In addition to the parties' positions, the current record would permit other arguments, including that Dobbins signed on behalf of himself and others who were doing business in some form as "Time Advisors."

Under Tenth Circuit case law, a broad arbitration clause creates a presumption of arbitrability "and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Cummings v. Fedex Ground Package Sys., Inc.,* 404 F.3d 1258, 1262 (10th Cir. 2005) (internal quotation omitted). In this case, the arbitration provision in the Time Advisors agreement is extremely broad. The provision states simply: "The parties consent to exclusive jurisdiction of the American Arbitration Association ('AAA') in Washington, D.C." *See* Distributor Agreement [Doc. 6-2], ¶ 4.4. Thus, the presumption of arbitrability may encompass claims by Dollar Phone against Kannayan, Dobbins and/or Time Advisors to collect Spydernett's unpaid account,[5] and require submission of the claims to the arbitrator, if the claims implicate issues of contract construction or the parties' rights and obligations *under the Time Advisors agreement.*

Dollar Phone suggests no issues requiring interpretation of the Time Advisors agreement. Dollar Phone does allege, however, that the dispute regarding Spydernett's debt implicates issues of the parties' rights and obligations under the Time Advisors agreement. However, the Court has carefully studied Dollar Phone's pleading and the arguments presented in Dollar Phone's summary judgment briefs and can find no cognizable basis for this allegation. Dollar Phone treated the accounts of Spydernett and Time Advisors as separate accounts. The sole links between the two accounts are Kannayan's contacts with Dollar Phone regarding them and an allegation that "Time Advisors and Spydernett commingled their accounts." *See* Answer [Doc. 6], ¶ 34. Kannayan's connection to the Time Advisors agreement remains unclear. More importantly, Dollar Phone's

---

[5] Dollar Phone's pleading leaves unclear what claim or claims it intends to assert in the arbitration. Its initial demand for arbitration (the only one shown by the record) was based solely on the Spydernett agreement.

allegation that Spydernett and Time Advisors commingled accounts, as amplified by the summary judgment record, is simply that Kannayan caused Spydernett to make payments on Time Advisors' account with Dollar Phone.  The Court is unaware of any legal basis to impose liability on Time Advisors, or any partner, for a debt of Spydernett (a limited liability company) simply because Spydernett paid a debt of Time Advisors.  Dollar Phone has not presented any fact, or articulated any legal theory, that would create liability of Time Advisors, or any partner, for Spydernett's debt.[6]

In short, the Court fails to discern any factual or legal connection between Spydernett's debt to Dollar Phone and the Time Advisors agreement, such that the arbitration clause in that agreement would cover the dispute.

## Conclusion

For these reasons, upon consideration of the issues and the summary judgment record, the Court finds that Kannayan and Dobbins are entitled as a matter of law to a judgment in their favor, in that the Time Advisors arbitration provision has no application to the dispute regarding the Spydernett debt.  Dollar Phone has failed to establish its claims that Kannayan and Dobbins agreed in the Time Advisors agreement to arbitrate a dispute regarding Sydernett's unpaid account.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment [Doc. Nos. 36 and 37], and Third Party Defendant Chad Dobbins' Motion for Summary Judgment [Doc. No. 14] are GRANTED.  Summary judgment shall be entered against Defendants Dollar Phone Corp. and Dollar Phone International, Inc. on all claims.

---

[6]  If Dollar Phone did allege that the Time Advisors and Spydernett accounts should be viewed in combination under some cognizable legal theory, this allegation would create a question as to the Court's jurisdiction.  Kannayan alleges that, due to a credit due on the Time Advisors account, the amount in controversy would not exceed $75,000, as required by 28 U.S.C. § 1332(a).  *See* Joint Status Report [Doc. No. 16], ¶ 2.

IT IS SO ORDERED this 27th day of February, 2009.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE